UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 05 B 54630 |
| FRED S. WEINER, | ) |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| | ) |
| DENT-A-MED, INC., d/b/a HC PROCESSING CENTER, | ) |
| | ) |
| | ) Adv. No. 06 A 688 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Judge Pamela S. Hollis |
| FRED S. WEINER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on the motion of defendant Fred S. Weiner for summary judgment. For the reasons stated below, the motion is denied.

## CONTENTIONS OF THE PARTIES

Dent-A-Med, Inc., d/b/a HC Processing Center, alleges that it holds a nondischargeable claim against Weiner in the amount of $172,267.93. According to the complaint, Weiner submitted charge slips to Dent-A-Med for dental services that he knew either were not provided to patients, were provided in a defective or substandard manner, or were provided to patients by unlicensed employees of his dental practice. Dent-A-Med alleges that it relied on the representations made by Weiner in these charge slips, and that but for those representations it would not have made any payments on behalf of Weiner's patients. These representations were false, argues Dent-A-Med, and Weiner knew that they were false. Therefore, the resulting claim

that Dent-A-Med holds against Weiner should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Weiner filed this motion for summary judgment, arguing that Dent-A-Med knew that Weiner and his dental practice were submitting charge slips for work that had not yet been performed. As a result, Dent-A-Med cannot prove that it justifiably relied on the representations in the charge slips. Without justifiable reliance, Dent-A-Med's claim is dischargeable regardless of whether Weiner made fraudulent representations.

## STANDARD FOR SUMMARY JUDGMENT

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings via Fed. R. Bankr. P. 7056. The Rule provides that summary judgment is proper if the papers and pleadings on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).

In order to prevail, the movant must satisfy all of the requirements of the underlying cause of action and demonstrate that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Then "the judge must view the evidence presented through the prism of the substantive evidentiary burden." Id. at 254. The burden is also on the moving party to show that there is no genuine issue of fact for trial. Id. at 249.

A factual dispute is a genuine issue for trial only if it is determinative of the outcome under applicable law. Id. at 248. See Frey v. Fraser Yachts, 29 F.3d 1153, 1156 (7th Cir. 1994).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings. Instead, its response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Bankruptcy Rule 7056-1, a party moving for summary judgment must file a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement

> shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

Local Bankr. R. 7056-1B.

The party opposing a summary judgment motion is required by Local Bankruptcy Rule 7056-2 to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr. R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr. R. 7056-2B.

Both parties complied with the requirements of Local Bankr. R. 7056. Having read the statements of material undisputed facts and the supporting exhibits, the court makes the following findings:

1. On December 20, 2002, a Provider Agreement was entered into by White Oak Dental P.C., doing business as Lifetime Smiles, Inc., with Dent-A-Med, Inc. Dent-A-Med was doing business as The HELPcard. Response, Ex. A. Fred S. Weiner signed the

-3-

agreement individually, although the notation "DISREGARD" is next to his signature. Id. Daisy K. Weiner signed on behalf of Lifetime Smiles, Inc. as its chairman. Id. White Oak did not register "Lifetime Smiles" as an assumed name with the Illinois Secretary of State. 7056-1 statement and Response, at 1.

2. According to records maintained by the Illinois Secretary of State, Lifetime Smiles, P.C. was an entity incorporated in Illinois on August 21, 1997. Response, Ex. 1. Lifetime Smiles, P.C. was involuntarily dissolved on January 2, 2004. Id. The old corporate name for Lifetime Smiles, P.C. was White Oak Dental, P.C. Id.

3. Weiner testified that he was the sole owner of Lifetime Smiles, Inc. Response, Ex. D, p. 10, lines 4-5.

4. Weiner admitted that he signed his wife's signature on corporate documents. Response, Ex. D, pp. 35 - 66.

5. In the affidavit attached as Exhibit B to this motion for summary judgment, Weiner states, "That I did not personally ever submit any charge slips to Dent-A-Med." Motion, Exhibit B at ¶ 6. However, in Defendant's Answers to Plaintiff's First Set of Interrogatories, filed in U.S. District Court for the Northern District of Illinois on July 26, 2006, Weiner gave the following response to question number 6:

State the name of all persons who prepared, directed the preparation of, participated in the preparation of or submitted, delivered or transmitted, any charge slip, invoice or other document from any Defendant to Plaintiff. For each person, indicate:

   (a)   A detailed description of any charge slip, invoice or other document submitted, delivered or transmitted to Plaintiff by such person, including but not limited to, nature of charge, name of patient, date of preparation and date of submission, delivery or transmission;

-4-

    (b)    A detailed description of their responsibilities and duties;

    (c)    The dates of their employment; and

    (d)    Their current address and telephone number.

ANSWER:    Fred S. Weiner

Response, Ex. C.

6. Joy Texter was authorized to prepare charge slips based on treatment plans prepared by Weiner. Lifetime Smiles submitted charge slips to Dent-A-Med through Texter. Additional Facts at 19. Texter testified at her deposition that it was her responsibility to submit charge slips to Dent-A-Med on behalf of Weiner's dental practice. Response, Ex. E, p. 51, lines 15-18; p. 89, lines 16-20.

7. Lifetime Smiles submitted charge slips to Dent-A-Med for work that was yet to be completed or even started. Additional Facts at 21.

8. Weiner attached a transcript of the following conversation that occurred on July 23, 2003, between Daisy Weiner and Angela Parette at Dent-A-Med:

Angela:    . . . . One of the things I've talked to Joy about it

Daisy:    OK

Angela:    and quite extensively is about submitting charges to the patient's account prior to the treatment being done. . . .

[Material omitted]

Angela:    I've talked to her about that. About billing and in course she, you know she sends the charges and then when Dr. Weiner tells her to do that and I've talked to them a little bit about the pre-billing and the risks of it, you know the risk that you're involved when the patients states getting a statement in the mail and they haven't received treatment that kind of throws up a red flag to them . . . .

Motion, Exhibit D, at pp. 2 and 3.

9. Parette stated in her affidavit that she "never advised any employee, agent, or representative of Lifetime Smiles that it was acceptable to submit charges on behalf of patients to Dent-A-Med, Inc. prior to providing services or products to patients." Response, Ex. G at ¶ 4.

10. The Provider Agreement states that Lifetime Smiles agrees to accept Dent-A-Med's credit cards "as payment for authorized goods and/or services provided to holders of the cards ("cardholders"). Response, Ex. A.

11. According to a report generated by the Illinois Department of Professional Regulation, Weiner's license to practice dentistry was temporarily suspended from November 24, 2003 through January 2, 2004, pending proceedings before the Board of Dentistry. Response, Ex. M. His license was also suspended from December 2, 2003 through February 3, 2004, and he was on probation from January 2, 2004 through July 30, 2004. Id. Weiner's license was again suspended on July 30, 2004. Id.

## LEGAL DISCUSSION

11 U.S.C. § 523(a)(2)(A) provides that a Chapter 7 discharge does not discharge an individual debtor from any debt

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition
>> . . . .

The elements that Dent-A-Med must prove in order to prevail under § 523(a)(2)(A) are that: (1) Weiner obtained funds through representations that he either knew to be false or made with reckless disregard as to the truth; (2) Weiner intended to deceive Dent-A-Med and (3) Dent-

-6-

A-Med detrimentally and justifiably relied on Weiner's misrepresentations. See Bletnitsky v. Jairath (In re Jairath), 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). See Field v. Mans, 516 U.S. 59, 74-75 (1995) (justifiable, not reasonable, reliance).

Section 523(a)(2)(A) also precludes discharge of debts obtained through actual fraud, which need not involve a misrepresentation at all. See McClellan v. Cantrell, 217 F. 3rd 890, 893 (7th Cir. 2000):

> [B]y distinguishing between "a false representation" and "actual fraud," the statute makes clear that actual fraud is broader than misrepresentation. Collier's treatise, while assuming along with the cases that we have cited that "actual fraud" involves a misrepresentation, defines the term much more broadly--as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another," 4 Collier on Bankruptcy para. 523.08[1][e], p. 523-45 (15th ed., Lawrence P. King ed., 2000) . . . .
>
> No learned inquiry into the history of fraud is necessary to establish that it is not limited to misrepresentations and misleading omissions. "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Stapleton v. Holt, 207 Okla. 443, 250 P. 2nd 451, 453-54 (Okla. 1952).

The Seventh Circuit also noted in McClellan that pursuant to the language of the statute, the fraud exception covers only actual frauds rather than constructive ones. Furthermore, reliance is not a necessary element under § 523(a)(2)(A) when actual fraud is alleged. "Reliance is relevant only when a fraud takes the form of a misrepresentation." Id. at 894.

Weiner focused on the issue of reliance in his motion for summary judgment. Nevertheless, the court will also address the other elements of a § 523(a)(2)(A) claim as well as some of the material questions of fact that preclude entry of summary judgment.

An Issue of Fact Exists as to Whether Fred Weiner Made False Representations to Dent-A-Med

In its complaint and its response to the motion for summary judgment, Dent-A-Med alleges that Weiner's misrepresentations were made when he submitted charge slips for dental goods and services which were not provided to patients or were partially provided to patients. Weiner asserts that since he never signed or prepared any charge slips, and never submitted any charge slips to Dent-A-Med, he could not have made false representations that would be the basis for a nondischargeability complaint.

An issue of fact exists regarding the submission of charge slips to Dent-A-Med. Weiner swore in his affidavit that he did not personally ever submit any charge slips to Dent-A-Med.[1] Yet in his answer to Interrogatory No. 6, Weiner stated that he did at least one of the following: "prepared, directed the preparation of, participated in the preparation of or submitted, delivered or transmitted, any charge slip, invoice or other document from any Defendant [including Lifetime and Fred] to Plaintiff [Dent-A-Med]." Meanwhile, Joy Texter testified at her deposition that it was her responsibility to submit charge slips to Dent-A-Med on behalf of Weiner's dental practice.

We know that the charge slips submitted to Dent-A-Med were submitted at Weiner's direction, since he admitted this in his answer to the complaint at paragraph 19. However, since Weiner's response to Interrogatory No. 6 failed to include any of the requested detail, the court has no idea whether Weiner did more than direct the submission of the charge slips. He may have actually prepared and submitted charge slips, or perhaps he merely delivered them, or only instructed Texter to do so. As a result, the court cannot tell whether Weiner's affidavit conflicts with his interrogatory answer and what his level of participation was in submitting the charge

---

[1] Although Weiner originally submitted an unsigned affidavit, he later filed one with his signature. See docket # 16, 06 A 688.

slips. The best way to resolve this question is to put Weiner on the witness stand and to ask him about his involvement with the preparation and submission of the charge slips. This is an issue of fact that cannot be resolved through a motion for summary judgment.

The question then becomes whether that issue of fact is material. Dent-A-Med's entire complaint hinges on the false representations allegedly contained in these charge slips. However, Weiner was not billing Dent-A-Med on his own behalf but was doing so for his dental practice, variously named White Oak Dental or Lifetime Smiles. The parties cannot even agree on the name under which Weiner was operating his practice.

Dent-A-Med filed a claim in Weiner's bankruptcy case, but White Oak Dental, P.C. and/or Lifetime Smiles, Inc. were the parties to the Provider Agreement, and the charge slips were submitted from them. Dent-A-Med asserts that Weiner is the alter ego of these entities, and it devoted a significant portion of its response to the motion for summary judgment to making that argument.

The court need not decide at this juncture whether the corporate veil may be pierced. This is Weiner's motion for summary judgment. As a result, <u>Weiner</u> has the burden of showing that no issue of material fact exists on the question of whether he is responsible for the debts of these entities.

The court certainly cannot say that no issue of material fact exists with respect to Weiner's status vis-a-vis White Oak and Lifetime Smiles. Weiner testified at his deposition that he was the sole director and shareholder of Lifetime Smiles, Inc. However, he also admits that he signed his wife's signature on corporate documents. As a result, the validity of these

Case 06-00688    Doc 54    Filed 03/22/07    Entered 03/26/07 11:59:19    Desc Main
         Document      Page 10 of 14

documents as well as Weiner's credibility as a witness are questionable. The court cannot determine the status of these entities without judging his demeanor on the witness stand.

It may be that when this case goes to trial, the court finds that even if Weiner did not personally submit any charge slips, he is still responsible for any misrepresentations made to Dent-A-Med by any of the employees of his dental practice. However, this question of liability cannot be resolved at summary judgment.

Dent-A-Med also argues that Weiner's failure to inform it that his license to practice dentistry was suspended is a basis for a finding of actual fraud. There is no dispute that Weiner's license was suspended on December 2, 2003 and July 30, 2004, but Weiner argues that he did not submit any charge slips for work performed while he was unlicensed.

The court has reviewed the charge slips attached to Dent-A-Med's complaint. At least two of the charge slips are dated after December 2, 2003:

| Patient Name | Date | Amount |
|---|---|---|
| Julie Sullivan | December 8, 2003 | $2,370.00 |
| Dan Brasic | December 10, 2003 | $10,000 |

These charge slips were submitted to Dent-A-Med during a time when Weiner was suspended from practicing dentistry. If these charges were for work that had not yet been performed, Weiner either could not have performed the anticipated dental work until after the suspension was resolved or he may have completed the services for which he billed Dent-A-Med during a time when he was unlicensed.

For all of these reasons, the court finds that questions of material fact exist with regard to whether Weiner made fraudulent representations to Dent-A-Med, or committed actual fraud, with regard to the charge slips submitted from his dental practice.

An Issue of Fact Exists as to Whether Weiner Intended to Deceive Dent-A-Med

The second element of a § 523(a)(2)(A) complaint is whether the debtor has demonstrated an intent to deceive the creditor. It is very difficult to make a determination about a debtor's intent at the summary judgment stage.

> Generally, questions of motive and intent are particularly unsuited for determination by summary judgment because they involve credibility determinations. Such determinations are best made by examining the demeanor and testimony of the parties. In re Metro Shippers, Inc., 78 B.R. 747, 751 (Bankr. E.D. Pa.1987); Matter of Warner, 65 B.R. 512, 520 (Bankr. S.D. Ohio 1986). Bankruptcy courts have traditionally held that allegations of fraud which involve factual issues of intent are not capable of resolution by summary judgment. Id.

In re Potter, 88 B.R. 851, 853 (Bankr. N.D. Ill. 1988).

The parties devoted little attention to the issue of intent, and the court concludes that an issue of fact exists as to whether Weiner intended to deceive Dent-A-Med.

An Issue of Fact Exists as to Whether Dent-A-Med Justifiably Relied on Fred Weiner's Representations

Dent-A-Med paid funds to White Oak Dental based on charge slips submitted pursuant to the Provider Agreement. Weiner argues that Dent-A-Med knew that White Oak engaged in pre-billing, and so Dent-A-Med has no legal authority to now claim that it relied on the representations in the charge slips and believed that the services listed on those slips had actually been performed.

The evidence before the court on this motion indicates that at least one of Dent-A-Med's employees, Angela Parette, knew on July 23, 2003, that White Oak was submitting charge slips

before work was performed. However, a number of the charge slips at issue were submitted prior to July 23, 2003:

| Patient Name | Date | Amount |
| --- | --- | --- |
| Don Hoffmeister | June 6, 2003 | $5,000.00 |
| Teresa Fisher | March 21, 2003 | $3,352.00 |
| Richard Leonard | May 16, 2003 | $8,000.00 |
| Richard Leonard | May 15, 2003 | $4,500.00 |
| Jeff Dye | May 28, 2003 | $13,100.00 |
| Dellia Murphy | June 4, 2003 | $5,000.00 |
| Faye Balbinot | December 20, 2002 | $3,000.00 |
| Laurence Wallace | June 3, 2003 | $5,000.00 |
| Michael Pritchett | May 20, 2003 | $4,500.00 |

Even if Parette's conversation with Daisy Weiner undercuts Dent-A-Med's claim of justifiable reliance after July 23, 2003, the court has no information about what Dent-A-Med knew before that date. Parette makes reference to previous conversations with Joy (presumably Joy Texter), but there is no evidence before the court about the substance of those conversations or when they occurred.

Moreover, the transcript of Parette's conversation with Daisy Weiner conflicts with the sworn deposition testimony given by Shauna Barnes, Dent-A-Med's Collection Support

Supervisor.[2] Barnes testified at her deposition that Dent-A-Med has an unwritten internal policy that prohibits pre-billing. The court read the transcript, and is aware that Barnes did not give this response until after an off-the-record discussion with her attorney.

However, this is exactly the sort of issue that can be resolved by the court when it sits as the finder of fact and considers not just the testimony of a witness but her credibility and demeanor. "Special deference must be accorded to credibility determinations 'for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief of what is said.' Anderson, 470 U.S. at 575, 105 S.Ct. at 1512." In re Bonnett, 895 F. 2nd 1155, 1157 (7th Cir. 1990).

An issue of fact also exists as to whether Dent-A-Med actually prohibited pre-billing for services. Dent-A-Med argues that its policy was that charge slips could only be submitted for goods and services that had been provided. But the Provider Agreement is not clear on its face. It states that Lifetime Smiles agrees to accept Dent-A-Med's credit cards "as payment for authorized goods and/or services provided to holders of the cards ("cardholders")." There is no express prohibition against billing before those authorized services are provided.

The transcript of the conversation between Parette and Daisy Weiner, to the extent that it falls within an exception to the hearsay rule, demonstrates only that one employee at Dent-A-Med knew as of July 23, 2003, that Lifetime Smiles was billing for services that had not yet been

---

[2] Defendant argues that Barnes was not testifying as a Rule 30(b)(6) deponent because her deposition was not so noticed. Judge Leinenweber discussed this same issue in the Memorandum Opinion he issued in 04 C 4780 (N.D. Ill. November 1, 2006), and he found that "Dent-A-Med is correct that the deposition of Ms. Barnes was not a Rule 30(b)(6) deposition." Mem. Op. at 7. Having reviewed the Notice of Deposition attached as Exhibit L to Plaintiff's Response, the court agrees with Judge Leinenweber's conclusion. Shauna Barnes was not testifying as person designated by Dent-A-Med to testify on its behalf pursuant to Fed. R. Civ. P. 30(b)(6).

rendered. Did Parette have the authority to act on behalf of Dent-A-Med? Were her actions in conflict with an actual Dent-A-Med policy? Did Parette waive Dent-A-Med's ability, to the extent it had such ability, to insist on billing only for those services that had already been provided?

Clearly, issues of fact exist regarding the parties' understanding of the Provider Agreement, Dent-A-Med's policies, and any waivers that may have occurred. These issues are material as they go directly to the question of Dent-A-Med's reliance on the representations contained in the charge slips. Of course, Dent-A-Med's reliance is irrelevant if it succeeds in proving that its debt was incurred as the result of actual fraud.

Under either scenario, summary judgment cannot be granted in Weiner's favor.

## CONCLUSION

For all of the reasons stated above, the court denies the Defendant's motion for summary judgment.

Date: MAR 22 2007

/s/ Pamela S. Hollis
PAMELA S. HOLLIS
United States Bankruptcy Judge