**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 05 B 54630 |
| FRED S. WEINER, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| DENT-A-MED, INC. d/b/a HC ) | |
| PROCESSING CENTER, ) | Adv. No. 06 A 688 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Pamela S. Hollis |
| ) | |
| FRED S. WEINER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.    PROCEDURAL BACKGROUND**

Plaintiff Dent-A-Med, Inc. brought this adversary proceeding against Debtor Fred Weiner seeking to except an alleged debt from discharge under 11 U.S.C. § 523(a)(2)(A). Weiner moved for summary judgment, and on March 22, 2007, the court issued a memorandum opinion denying Weiner's motion. A trial commenced on September 26th and 27th, 2007. At the completion of Dent-A-Med's case, Weiner moved for a directed verdict [sic]. The court required the parties to submit memoranda and after reviewing the briefs, the court declined to enter judgment in favor of Weiner on partial findings under Rule 7052 of the Federal Rules of Bankruptcy Procedure. Trial was reconvened on April 17, 2008, for presentation of Weiner's

case. After Weiner rested, the court took the matter under advisement. After reviewing all the evidence, the court enters judgment in favor of Weiner and against Dent-A-Med.

## II.    NATURE OF THE CASE

Weiner was a dentist who operated his practice through several corporations and assumed names. Dent-A-Med, doing business as the HC Processing Center, financed the cost of dental services provided to some of Weiner's patients. Generally, after Weiner's offices submitted a charge slip to Dent-A-Med for dental work on a patient approved for financing by Dent-A-Med, Dent-A-Med wired payment to the checking account of one of Weiner's offices. Participating patients became obligated to reimburse Dent-A-Med for the cost of treatment instead of Weiner, which they could do over a period of time, with interest. Commencing in November 2003, and at various times thereafter, Weiner was temporarily suspended from the practice of dentistry in Illinois, put on probation, and ultimately suspended again on July 30, 2004. Following publicity of Weiner's troubles, a number of patients complained to Dent-A-Med that Weiner either did not complete work that Dent-A-Med was attempting to bill them for or completed it negligently. It appears that Dent-A-Med was unable to collect from complaining patients and sought reimbursement from Weiner for funds that Dent-A-Med previously transferred to Weiner's offices for patient treatment.

On July 21, 2004, Dent-A-Med filed a civil suit against Weiner, his companies and certain employees in federal district court alleging common law fraud, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and breach of contract. See Dent-A-Med, Inc. et al. v. Lifetime Smiles P.C., et al., No. 04 CV 4780, pending in the Northern District of Illinois, Eastern Division ("District Court Action"). The District Court Action is premised on two legal theories: breach of contract and fraud. The contract action alleges that defendants are

2

obligated to reimburse Dent-A-Med for funds not paid by and/or credited to patients by Dent-A-Med pursuant to a "Provider Agreement." Fraud is alleged on the basis that defendants submitted charge slips for work not completed, done improperly or improperly performed by non-licensed employees.

On October 14, 2005, Weiner filed a voluntary Chapter 7 bankruptcy case, which stayed the District Court Action as to Weiner. Dent-A-Med timely filed this adversary proceeding, essentially alleging the same facts as in the District Court Action: Weiner billed for partially complete work and Weiner's work was negligently or improperly performed by unlicensed employees of Weiner's companies. See First Am. Adversary Compl., ¶¶ 44-46. The First Amended Complaint requests this court to declare $172,267.93 non-dischargeable under 11 U.S.C. § 523(a)(2)(A), apparently the amount Dent-A-Med was unable to collect from complaining Weiner patients.

At the trial, Dent-A-Med submitted no evidence that Weiner delegated dental work to unlicensed professionals. As to whether Weiner's offices performed work negligently, no expert was offered to testify that the work on any patient deviated from reasonably professional standards. Although the number of complaints submitted to Dent-A-Med suggests that many patients were unhappy, the court cannot rely on complaints of lay individuals, who do not wish to pay for treatment after learning Weiner was suspended, as evidence of his malpractice or of incomplete procedures. Without the assistance of expert testimony, this court is in no position to determine how Weiner or his staff performed.[1]

---

[1] Medical malpractice or negligence can be excepted from discharge under 11 U.S.C. § 523(a)(6), where, in addition to expert testimony establishing a deviation from a standard of care, debtor's willful and malicious intent is also established. See King v. Sanez (In re Sanez), 1993 WL 99268, at *4-6 (Bankr. N.D. Ill. Mar. 31, 1993). The court need not determine Dent-A-Med's standing to bring such an action, as opposed to the patient, since the complaint does not state a cause of action under § 523(a)(6). Also, medical malpractice may be actionable under 11 U.S.C. § 523(a)(2)(A) if the doctor misrepresents his qualifications or existence of malpractice insurance to the patient, but

3

Moreover, while patient complaints might be helpful in determining whether certain procedures were completed before a charge slip was submitted to Dent-A-Med, the complaint letters in this trial were admitted only to prove notice or existence of complaints, and not for the truth of the matter asserted.[2] Significantly, Dent-A-Med was aware that Weiner's offices submitted charge slips for work not yet completed and only objected to "pre-billing" after a rash of patient refusals to pay Dent-A-Med surfaced when Weiner's suspension was publicized.

While Weiner may have been professionally incompetent, greedy and barely if at all credible,[3] Dent-A-Med failed to establish fraud or misrepresentation perpetrated specifically against it by Weiner. Dent-A-Med, for whatever reason, elected to credit Weiner's patients a total of $172,267.93. Under its contract with the Weiner affiliated companies, Dent-A-Med may have a right to reimbursement for that or some other amount. However, absent expert testimony linking Weiner and fraud to each patient transaction credited, this court simply cannot transform total potential contract damages into total fraud damages. Dent-A-Med's failure to establish a fraud case renders it unnecessary to even consider whether Weiner can be liable as the alter ego of various corporations and entities established to operate his dental practice.

### III.   FINDINGS OF FACT

In accordance with Federal Rule of Bankruptcy Procedure 7052(a), the following constitutes the court's findings of fact:

---

again, the deviation of care is not proven by the patient alone, but with expert testimony. See, e.g., Abrahamson v. Doyan (In re Doyan), 204 B.R. 250 (Bankr. S.D. Fla. 1996).

[2] While Dent-A-Med called a few patients as witnesses, none were qualified as experts sufficient to determine the course and sequence of treatment or the standard of care.

[3] Evidence suggests to this court that Weiner signed his wife's name to corporate documents and bank signature cards possibly to avoid IRS collection actions against him. Also, Weiner's dental practices have been in bankruptcy before, and he has effectively employed the corporate structure to protect himself personally. Finally, his multiple suspensions suggest professional incompetence. However, the evidence also indicates that Weiner consented to at least some of these suspensions, thus avoiding hearings where allegations of malpractice could be finally determined for or against him.

4

1. White Oak Dental, P.C., a professional corporation under which Weiner practiced dentistry, was incorporated on August 21, 1997. Pl. Ex. No. 12. Weiner was the sole shareholder and director of White Oak Dental, P.C. Id. The name of this corporation was changed from White Oak Dental, P.C., to Lifetime Smiles, P.C., on or about May 19, 2003. White Oak Dental, P.C. was involuntarily dissolved by the Illinois Secretary of State on January 2, 2004.

2. Lifetime Smiles, Inc. was incorporated on June 23, 2000. Pl. Ex. No. 13. Daisy Knezevich-Weiner, Weiner's spouse ("Daisy"), was the sole shareholder and director of Lifetime Smiles, Inc. Id. Lifetime Smiles, Inc. later became known as DW Management Company. DW Management Company was involuntarily dissolved by the Illinois Secretary of State on November 1, 2005.

3. Lifetime Smiles, Inc. was the entity responsible for the management operations of White Oak Dental, P.C.

4. On December 20, 2002, Dent-A-Med entered into the Provider Agreement with White Oak Dental, P.C., doing business as Lifetime Smiles, Inc. Pl. Ex. No. 3. Under the Provider Agreement, the provider would submit charge slips to Dent-A-Med for payment for dental goods and/or services.

5. The charge slips submitted to Dent-A-Med were on behalf of provider White Oak Dental, P.C., doing business as Lifetime Smiles, Inc. Pl. Ex. Nos. 2 & 3.

6. The Provider Agreement on its face does not indicate a prohibition against billing before authorized goods or services are provided, also known as "pre-billing." The preamble to the Provider Agreement is the sole basis for Dent-A-Med's assertion that pre-billing was expressly prohibited.

5

7. White Oak Dental doing business as Lifetime Smiles pre-billed some services.

8. Dent-A-Med did not have a written policy prohibiting pre-billing.

9. Dent-A-Med knew that there were charge-slips submitted by Lifetime Smiles for goods and/or services that were not yet provided or performed, and knew those goods and/or services were pre-billed. This is evidenced in the July 23, 2003 phone call between Daisy and Angela Parette, a representative of Dent-A-Med who regularly worked with Lifetime Smiles ("Parette"):

> Angela: **So, both of these credits are after, after the 45 days. One of the things I've talked to Joy about it**
>
> Daisy: ok
>
> Angela: **and quite, extensively is about submitting charges to the patients account *prior to the treatment being done*...**
>
> Daisy: ok
>
> Angela: **Now I know in your case especially when you're doing cosmetic dentistry and sintology thing of that nature**
>
> Daisy: **uh huh**
>
> Angela: **that you have incurred the greater cost when you start doing the molding and the creating of the products**
>
> Daisy: **Right**
>
> Angela: *It's ok to submit the charges on those at that time*
>
> Daisy: **Ok**
>
> Angela: **But we just want to make sure that you are not at any risk being assessed additional fees because of credits not being issued in a timely manner or**
>
> Daisy: **Ok**
>
> Angela: **because of charges being posted prior to treatment being started**

(Emphasis supplied.)

6

10. Accordingly, prior to January 6, 2004, Dent-A-Med was aware that Lifetime Smiles engaged in pre-billing, and regularly accepted Lifetime Smiles' practice of pre-billing. Moreover, as reflected in the above conversation, Dent-A-Med, through Parette, warned Lifetime Smiles that its practice of pre-billing could result in additional fees when charge backs to the dental office occur 45 days or more after submission of the charge slip. While Parette wanted Lifetime Smiles to know that pre-billing could create additional costs for the dental office, she did not indicate pre-billing was prohibited, much less fraudulent.

11. Weiner's license to practice dentistry was suspended from December 2, 2003 through February 3, 2004. Pl. Ex. No. 18.

12. Most of the patient complaints and letters submitted to the court by Dent-A-Med were dated after Weiner's suspension and most of those complaints related to work performed several months prior to the suspension.

13. After Weiner's suspension, on January 4, 2004 Dent-A-Med announced to Lifetime Smiles that pre-billing would no longer be allowed by Dent-A-Med. Pl. Ex. No. 23, Disk 2, Index No. 032834. In a conversation on that date between Joy Texter ("Texter"), Lifetime Smiles' treatment coordinator, and Deborah Manley, Dent-A-Med's dispute resolution coordinator, Texter stated that this was the first time she had heard that pre-billing would not be accepted by Dent-A-Med. Id.

14. When Texter informed the Dent-A-Med employee that Dent-A-Med had up to then permitted the submission of pre-billed charge slips to Dent-A-Med and that Parette, Dent-A-Med's Regional Account Manager, was aware of and approved the pre-billing, Texter was told that a Dent-A-Med "vice president" has now prohibited pre-billed charge slips.

7

15. January 6, 2004, was in fact the first time Lifetime Smiles learned that Dent-A-Med would no longer accept pre-billing.

16. Before this, on June 4, 2003, Weiner spoke to Parette about charges submitted for a particular patient. Pl. Ex. No. 23, Disk 2, Index No. 095117B. Parette informed Weiner that a charge could not be posted "knowing that all the treatment hasn't been done." Weiner stated that he understood. Id. This conversation related only to one specific patient and instance, and does not outweigh the evidence that establishes the historical pattern of pre-billing that was frequently submitted by Texter and accepted by Parette at Dent-A-Med.

17. With respect to the two charge slips that were submitted by Lifetime Smiles on December 8th and 10th, 2003, Dent-A-Med offered no evidence to prove these services were actually performed during a time when Weiner was suspended from dental practice. The services could have been performed prior to his suspension, or the charge slips could have been submitted as part of the pre-billing practice. Moreover, Weiner testified that other dentists worked for him during his suspension. This was not contradicted, but in fact acknowledged by some of the patient complaint letters.[4]

18. Weiner signed Daisy's name on some of the corporate records and bank signature cards for Lifetime Smiles, Inc.

19. Weiner did not file an assumed name certificate for Lifetime Smiles, but the underlying corporate entity, White Oak Dental, P.C. was disclosed in the Provider Agreement with Dent-A-Med.

---

[4] The court did not admit patient letters for the truth of the matter asserted and relies on Weiner's testimony only, but notes that the letters corroborate Weiner's statement that other dentists worked for him during his absence.

8

## IV.    LEGAL DISCUSSION

Contrary to Weiner's attempt to recast this action into one brought under 11 U.S.C. § 523(a)(2)(B), Dent-A-Med's claim is based on 11 U.S.C. § 523(a)(2)(A).[5] Section 523(a)(2)(A) provides that a Chapter 7 discharge does not discharge an individual debtor from any debt

> (2)   for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by
>
>> (A)   false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

There are three bases under which Dent-A-Med may prevail on its claim: actual fraud, false pretenses and a false representation. 11 U.S.C. § 523(a)(2)(A). In order to except false pretenses or a false representation from discharge, Dent-A-Med must establish that (1) Weiner made a false representation of fact, (2) which Weiner (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive, and (3) Dent-A-Med justifiably relied on the false representation. See Vozella v. Basel-Johnson (In re Basel-Johnson), 366 B.R. 831, 845 (Bankr. N.D. Ill. 2007). In order to prevail, Dent-A-Med must establish all three elements. Id.

---

[5] As distinguished from Section 523(a)(2)(A), Section 523(a)(2)(B) provides that a debt may be excepted from discharge to the extent it was obtained by - "use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). The court agrees with Dent-A-Med that its complaint is brought under Section 523(a)(2)(A) only. The charge slips are not written statements respecting the financial condition of any party. Fischer Investment Capital, Inc. v. Avie Cohen, (In re Avie Cohen), 334 B.R. 392 (Bankr. N.D. Ill. 2005) is distinguishable. There, account receivables in aggregate were presented to obtain a business loan. Aggregating receivables can conceivably paint a picture of a corporation's financial condition. One charge slip does not. Accordingly, the court will address Dent-A-Med's complaint under Section 523(a)(2)(A) only.

9

Dent-A-Med argues that because the charge slips submitted by Lifetime Smiles were for work not yet performed by Weiner, they constitute false representations under Section 523(a)(2)(A). The court disagrees.

At the center of Dent-A-Med's argument is its allegation that pre-billing was prohibited, and therefore any pre-billed charge slips submitted to Dent-A-Med were false representations under Section 523(a)(2)(A). However, Dent-A-Med failed to establish that during the relevant time periods, it prohibited pre-billing. Because Lifetime Smiles' pre-billing was a routine practice known to Dent-A-Med, Dent-A-Med did not prove that the charge slips were false representations.

Notwithstanding Parette's statements that some pre-billing was acceptable, Dent-A-Med insists the Provider Agreement banned it. First, this asserts nothing more than a breach of contract. While generally actionable, a breach of contract is not a fraudulent misrepresentation. Second, the language in the preamble to the Provider Agreement simply is not clear enough to override the pattern of actual practice between the parties. In that preamble, White Oak Dental, P.C., doing business as Lifetime Smiles, Inc. agrees to accept Dent-A-Med's credit cards "...as payment for authorized goods and/or services provided to holders of the cards..." Dent-A-Med argues that the terms "authorized" and "provided" lacking the preceding "to be" authorized or "to be" provided means pre-billing is not allowed. However, the very first paragraph of the agreement, equally as vague as the preamble, suggests the opposite:

> "[Dent-A-Med] may, at its sole discretion, pay the Provider for charges prior to the company's receipt of a signed charge slip..."

This paragraph also grants Dent-A-Med the power to revoke its payment if an authorized charge slip is not forthcoming. There is no express provision excluding pre-billing anywhere in the Provider Agreement. There is no language strong enough to convert Lifetime Smiles' pre-billing

10

practices into fraudulent misrepresentations, particularly when Dent-A-Med was aware of the practice for many months prior to changing its policy.

Finding that the charge slips were not fraudulent misrepresentations, the court turns to whether Dent-A-Med has proven actual fraud. Actual fraud is not limited to misrepresentation, but may encompass "'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" McClellan v. Cantrell, 217 F. 3rd 890, 893 (7th Cir. 2000) (quoting 4 Lawrence P. King, Collier on Bankruptcy, ¶ 523.08(1)(e), at 523-45 (15th ed. rev. 2000)). The McClellan court held that a creditor must establish the following to state a cause of action for actual fraud under Section 523(a)(2)(A): (1) a fraud occurred; (2) the debtor was guilty of intent to defraud; and (3) the fraud created the debt that is the subject of the discharge dispute.

Dent-A-Med failed to establish that Weiner, Lifetime Smiles or affiliated offices never intended to complete the work submitted in the charge slips. Weiner's suspension certainly was an intervening factor that could have curtailed the ability to finish. While intervening events may prevent performance, the failure to perform does not become "fraud" in such a circumstance. Goldberg Securities, Inc. v. Scarlata (In re Scarlata), 979 F. 2nd 521, 525 (7th Cir. Ill. 1992); see also Rae v. Scarpello (In re Scarpello), 272 B.R. 691, 701 (Bankr. N.D. Ill. 2002), where Judge Squires observed:

> The Court finds that the Creditor has not established by a preponderance of the credible evidence that the Debtor obtain[ed] the subject funds from her by means of either fraud, false pretenses or a false representation. The Creditor failed to demonstrate that the Debtor then possessed the requisite intent to deceive her. Moreover, the Court cannot infer an intent to deceive on the part of the Debtor. For purposes of § 523(a)(2)(A), proof of intent to deceive is measured at the time the debtor obtained the funds from the creditor. Ensuing conduct contrary to a former representation by a debtor does not establish that the original representation was false.

11

> The Debtor admittedly breached her promise and agreement to hold the proceeds for the exclusive benefit of the Creditor and her children by later making unauthorized use of the funds for her own purposes when she encountered the marital, employment and financial reverses. While this conduct may amount to breach of promise, it does not rise to the level of fraud, false pretenses or a false representation. Given the close relationship of the parties, the Creditor justifiably relied on the Debtor's representations that she would hold the money for her benefit and that of her children. However, there is simply no sufficient showing that the Debtor had the proscribed subjective fraudulent intention at the time she obtained the proceeds from the Creditor.

[Citations omitted.]

While Dent-A-Med suggested that Weiner's impending suspension triggered a fraudulent scheme to grab as much money as possible before ceasing to practice, there was no evidence of this. The suspension itself, as opposed to any fraudulent intent by Weiner, could have equally caused the work not to be completed, thus resulting in damages to Dent-A-Med. Moreover, Dent-A-Med failed to prove its allegation that Weiner's offices used unlicensed personnel to perform dental work. Weiner testified he had other dentists working for him during the suspension and at least one of the patient letters referred to another dentist. Dent-A-Med did not identify a single individual who performed dental services without a license. With respect to the charge slips submitted on December 8th and 10th, 2003, Dent-A-Med did not demonstrate that the services were actually performed during a time when Weiner was suspended from dental practice, and even if Dent-A-Med had done so, it did not establish that treatment was administered by an unlicensed person.

Finally, Dent-A-Med offered no *expert* testimony to establish that Weiner or his offices performed defective procedures or committed malpractice on specific patients. This sets aside the question of whether Weiner or his offices knew of the malpractice and intended to charge the patients and Dent-A-Med anyway. This latter question would have had to be answered yes in order to elevate the malpractice into actual fraud. Patient testimony and letters certainly suggest

12

that Weiner was not a good dentist, but neither the patients nor this court are qualified to judge his professional competence.

For these reasons, Dent-A-Med failed to establish actual fraud under Section 523(a)(2)(A). The debt at issue was not caused by fraud perpetrated by Weiner. Rather, the debt arose out of the routinely accepted pre-billing practice between Lifetime Smiles and Dent-A-Med in their course of business under the Provider Agreement. The debt owed to Dent-A-Med was not the result of any "surprise, trick, cunning, dissembling, [or] any unfair way by which another is cheated." McClellan v. Cantrell, 217 F. 3rd 890, 893 (7th Cir. 2000) (quoting Stapleton v. Holt, 250 P. 2nd 451, 453-54 (Okla. 1952)). In considering the evidence presented at trial, the court simply cannot infer a subjective intent on the part of Weiner or his companies to fleece Dent-A-Med.

Given this court's conclusion that fraud was not established, it is unnecessary to determine whether the corporate veil should be pierced to hold Weiner liable as the alter ego of White Oak Dental and Lifetime Smiles or for the acts of its employees.

## V. CONCLUSION

For the reasons stated herein, judgment will be entered in favor of the defendant, Fred S. Weiner and against plaintiff, Dent-A-Med.

ENTERED:

DATE: JUL 3 2008

PAMELA S. HOLLIS
United States Bankruptcy Judge

13